Okay, we'll call our next case, United States v. Brunson. Thank you, Your Honor, and may it please the court, my name is David Fine. I represent the appellant Dexton Brunson. I'm joined at council table by my colleague, Breonna Edwards. Judge Jordan, may I reserve three minutes for rebuttal? Yes. Thank you, Your Honor. In Arrington, this court said that a 2255 petitioner or movement need not prove anything to warrant a hearing. He must simply allege a set of facts that is not frivolous or clearly contradicted by the record and that demonstrates, if assumed to be true, that he would plausibly be entitled to relief under Strickland. And indeed, in that case, Judge Ambrose, who wrote the majority opinion, said that one cannot accelerate the timeline for proving a Strickland claim. What do we have in this case? We have a case where even the government said, and I quote, remarkably, Brunson's attorney did not ask any questions of the only witness called that would have developed his argument that the information in the affidavit regarding cocaine being in a baggie was deliberately or recklessly false. Brunson did not call a single witness regarding the single statement in the affidavit that he claims was false and deliberately or recklessly made. Would it have helped to have somebody get on the stand and say, it was in a dollar bill, it wasn't in a baggie? What would that have added? Your Honor, what it would have added was that it would have been, number one, a smaller quantity, presumably, or at least something that should have been examined on cross-examination of the agent who gave the information to the affidavit. The court will recall that here it was a trooper, Fink, who swore out the affidavit from information provided by another trooper and a deputy. Right. And that, unless I'm misunderstanding, the only thing that was identified as problematic was what the cocaine was in. Was there some other thing that they could have, I mean, I know that your client has said, well, no, we didn't have marijuana strewn around the floor, that was false, et cetera, et cetera. But of course, they had pictures of the marijuana on the floor that they introduced into evidence. I mean, since we have to put ourselves with a very strong presumption of reasonable strategic thinking by counsel, since that's the mindset we have to put ourselves in, is there some other thing besides baggie versus a dollar bill as container for cocaine in Mr. Brunson's pocket that you could point at to say he should have gone at that? Your Honor, the first point I'd make is that one would search the transcript of the suppression hearing in vain to find any indication that counsel was being strategic about anything. I don't quite understand why the district court suggested otherwise. Counsel said that he was going to call- I mean, the district court said that. Didn't they say it was a considered decision? I mean, isn't a cross-examination only strategy sometimes the best strategy? Well, that would be true if, in fact, Mr. Rivera, trial counsel, had cross-examined in any meaningful way Trooper Fink. But he didn't. And he also said at the beginning of the suppression hearing that he was going to call Trooper Nowitzki and Deputy Lewis and somehow seemed to forget to have done that. In terms, Judge Phipps, of your question about whether this court owes deference to Judge Jones's determination that there was some sort of strategy, to some degree, yes. But one would have a hard time finding anything to suggest that there was a strategy here, because we don't know why Mr. Rivera did any of those things. It can be perilous for criminal defendants to, you know, testify. Oftentimes they choose not to, even at suppression hearings. They sometimes choose not to. And could have been saving your client from a perjury charge for him to get on the stand and say, you know, there was never marijuana on the floor. Your Honor, I'm Officer So-and-so. I saw it on the floor. Here's Officer So-and-so. She saw it on the floor. Here are the photographs we took on the day that we walked in there showing the marijuana on the floor. You know, not only does he now have trouble with a drug charge, he's got trouble with a perjury charge. Isn't that a perfectly sensible thing for a defense counsel to be thinking about? It is, absolutely. And indeed, that was the point of distinction in the Arrington case, right? Arrington was a case that talked about how low the standard is for a hearing, but it said the only evidence they wanted to put on was to put him on, the defendant, and that would have been devastating, I think was the word that Judge Ambrose used. But that's not this case. In this case, we have the girlfriend, Ms. Wilson, Kadeen Wilson, who had testified. What does she add? I mean, she adds that when she left the house at 4 a.m. or, you know, approximately very early, there was nothing on the floor. I mean, what's the probative value of that? The police hadn't been at the house at that point in time. There was nothing associated with that. She might as well have testified that 30 days beforehand there was no marijuana on the floor in terms of what the real, real, real events that matter in the case are. And so it's hard for me to see that anything that she would have said would have been probative, and maybe if they would have called both, they would have actually found strange inconsistencies, too. Your Honor, let me answer that in parts. The first thing is that I think we could probably agree that it is different if she saw a clean house on the morning of the search rather than 30 days before. Beyond that, it is probative if one considers the standard that this Court needs to apply under Arrington and under McCoy and, frankly, under Section 2255B, which is that you only skip a hearing if it is conclusive from the record that you cannot prove your point. That's the burden here, and that burden weighs against weighing the evidence or saying, well, we don't think it's probative enough. So that's point one. If I could... Wait, wait, wait. When you take that position, what you really sound like you're saying, Mr. Fine, is you always have to have a hearing. You always have to have a hearing. No. Because couldn't you always say, you know, there's something that could have happened? Like, if you'd had a hearing, there's something that could have been said. Here, you've got photographic evidence. You got the testimony of police officers. You got the only thing that was in error, it seems, was a mistake on the part of the affiant that there was a baggie instead of a dollar bill and a finding of fact by the district court judge that that was an inadvertent mistake. If that's the whole of it, why are we not perfectly consistent with McCoy and with Thomas? Why aren't we in a posture where we're saying, well, there's no prejudice to the client here, and it's pretty obvious that there were downside risks to putting the defendant on the stand. So, done. I apologize for interrupting, Judge Jordan. Let me go back to the beginning of your question. No, I am most certainly not asking this court to hold that you should always have to have a hearing. What I am, however, saying is that the language of the statute says you shall have a hearing unless, which means it's an exception, and the exception is when it's conclusive. Now, what could have been done here, and this is also in part my answer to an earlier question from Judge Phipps, it's not, and I am certainly not pushing the point that Mr. Brunson should have been called to testify. I understand the problems with that, as the court recognized in Arrington, for example. However, the girlfriend's testimony, at least what she talked about in the affidavit, is somewhat probative, and we don't know what more she might have said because counsel never explored it. We know that. In addition... Do you have anything that would indicate there was something else she would have said? Yes. What? We have what Mr. Brunson testified to in his affidavit, which is they kept the house clean because they had children come over to the house, and they would never have let the marijuana be out in the house. But the photograph, you know, if there weren't the photograph here, I would say, okay, these are very debatable points, but you have the photograph, and you know, I've tried a lot of cases before I went on the bench, and I would never call a witness to the stand whose testimony was going to be directly contradicted by a photograph because it's going to destroy all credibility, and the jury is not only going to not believe what he's saying in that regard, they're just not going to believe a word he says. And isn't that a valid, for any competent attorney, a valid plan on how to handle this situation as is reflected by the trial court's opinion? Respectfully, Judge Roth, no. It's not valid. Because, for example, we know that there was a mistake in the affidavit of probable cause, at least a mistake. We know, and that's been explained. But it's not— We know there's a photograph. I'm sorry, I didn't mean to talk over you, Your Honor. Go ahead. Counsel simply accepted that it was a mistake, number one, when the standard under Franks is, of course, that it has to be either deliberate or reckless. Counsel made no effort to prove either one of those. Number two, he had present in the courthouse, according to the assistant U.S. attorney, the two agents who fed the information to Trooper Fink. You would have thought that having had Trooper Fink acknowledge that he'd gotten something wrong, that counsel would have put those other two people on the stand to say, now, exactly what did you tell him? Now, you might argue—you wouldn't argue, Your Honor, you would posit—that, of course, they're going to say what's consistent with the photographs. That's possible, but why wouldn't you try it, given that the alternative is you lose? Why would you try it? Why would you try it? I mean, if what you're trying to do is bug a district court judge by saying, you know, I just thought they might say the photographs were wrong, I guess you could do that. But isn't it a much more sensible approach for a defense attorney to say there's no point in putting the officers who are on the scene there because they're not going to say, yeah, we didn't tell Fink what he said he said, and these photographs, they're from some other place. I mean, the only thing you can do is burn time and have it reinforced in the court's mind at this suppression hearing. Yeah, this guy's a drug dealer. Now I've got three cops telling me it and not one. I'm a little mystified by the assertion that that was something a competent defense attorney should have done. That, in fact, not doing it is so far beyond the pale that you're in Strickland territory now. May I answer, Your Honor? I wish you would. Thank you. As Judge Becker would have said, I'm now on the court's time. Your Honor, the answer to that is that you have now gotten very far afield from the language of because now you're debating with me the merits of a Strickland claim, not whether there's at least a colorable possibility and it's not conclusive. I'm sorry, but your go-to is really the Texas statute, which talks about conclusive, right? But Strickland claims have two parts. They have performance and they have prejudice. And so far, everything that I've heard has been about the performance prong, something that we could have investigated different deficiencies in counsel that would maybe establish deficient or inadequate performance, such that a hearing would be needed. But you don't get a hearing just because you've got a Strickland prong one problem if you don't have at least something that shows that you've got a Strickland prong two problem, prejudice, right? That's the statute. And I don't know what you've got in the way of Strickland prong two. Nothing that would have happened there, the amount of independent evidence in this case, we've got a warrant that I believe says there was a strong odor of marijuana in the house. That's going to give you some ability to look around, usually, right? Then we say, oh, he was furtive in his movements. Oh, we found him walking towards three large safes. Oh, he had a prior criminal history for dealing marijuana and cocaine. And now the answer is, hey, in light of all of that, right? What difference does it make at all if he should make? Your Honor, the answer to that question is that the posture of the case makes it almost impossible for me to give you a clear answer because we don't know what the agents, right? Doesn't that make it conclusive? No. Well, Your Honor, that would be an entirely circular position. It would be, you don't have to have a hearing because it's conclusive. And the hearing is the only way you could demonstrate that it's not conclusive. Well, you have to show some degree of clarity. Absent the strong odor, absent the furtive movements, after the walking towards the three safes, and absent the criminal history, you might be able to say, hey, I would have made a huge difference. This was the only basis for the warrant that they had. So that's what's different. I'm not trying to create a circular loop. I'm saying you've got to account for the other things that are in the case already. Judge Phipps, I understand the point. If I might sort of sum up, because my guess is Judge Jordan is going to want me to do that. Well, yeah, in a minute. But I even want to take what Judge Phipps has said one step further, because the prejudice probably isn't bothering me too, that there's, even if you gave everything to you about they lied about the odor of the marijuana, they lied about seeing marijuana, they lied about the photographs, they were there to execute a fugitive warrant. They were going to pat the guy down. They were going to find the cocaine in his pocket. And having found the cocaine in his pocket, then there was going to be a search warrant to look for other drugs. All those things seem to be pretty conclusively in place. Where's the prejudice? Yeah, where's the prejudice for not calling somebody else to testify? How do we, how do you not get to conclusive and therefore no prejudice when they're there for a fugitive warrant? They're going to pat him down. They're going to find the cocaine, whether it's in a baggie or a dollar bill. We don't know how much cocaine was in the dollar bill, for example, and we don't know what other evidence we might have been able to test them on through the course of things. And I understand your point, Judge Jordan, but if I could just if we did not know already that there was a falsehood in the affidavit of probable cause. Falsehood's a tough word. There was a mistake. That's what the district court said. The district court heard him and the district court found this was inadvertent. But you're putting the rabbit in the hat respectfully, Your Honor. Well, by saying it's a mistake, that's the problem. Isn't it a finding of fact? It's a finding of fact that was clearly erroneous because there was no questioning. There was no effort. There was no effort to examine the center of the agents involved. He said, oh, it's a mistake. Okay, it's a mistake. So that seems to suggest, though, that any mistake ever made would allow, would mandate a hearing no matter the strength of evidence that the mistake was inconsequential. That the evidence was so strong for independent bases for conducting a search or whatever the deficient performance would be. I wouldn't say that, Judge Phipps. It's close. So you're saying something close, right? I'm saying that to say that something is conclusive has meaning and that's what the statute says. It's a high bar. It's a high bar. To say conclusive or to use the language that Judge Ambrose used in Arrington and, Your Honor, that you used in Haston just a few months ago, at least in the majority opinion in Haston, and I recognize that that was not done. And you understand that the dissent in Haston really fixated on the prejudice prong. But with the passage of time, we're sure the dissent will rethink that position. It's a low standard simply to get a hearing. I'm not here arguing that he should have had habeas relief. I'm arguing that he should have had a chance to prove that there should have been suppression because of ineffective assistance. Okay. Thanks very much, Mr. Fine. We'll hear from the government. It pleases the court, Carlo Marchioli on behalf of the United States. I'd like to pick up on some of the questions the court was asking toward the end of Mr. Fine's time, and that relates to the prejudice prong. Really the point here and the reason the district court was correct in denying the motion without an evidentiary hearing is that Mr. Brunson's Strickland claim, accepting all of the allegations in his affidavit as well as his girlfriend, Ms. Wilson's affidavit as true, that Strickland claim would still fail. Because really the only thing that those affidavits attempted to establish was that there was not marijuana scattered on the floor at the time of Mr. Brunson's arrest. So even if we accept that as true, if you strike from the probable cause of the affidavit, that portion, you're still left with the fact that there's cocaine found in the house and specifically in Mr. Brunson's pants at the time of his arrest. Doesn't matter if it's in a dollar bill or whether it's in a baggie. This is what the court said in Mr. Brunson's direct appeal. You also have the fact that officers smelled a strong odor of marijuana as they were entering the residence. And as they were entering the residence, Mr. Brunson retreated to an upstairs area of the residence. And that area happened to have three large security safes. And the probable cause affidavit also included Mr. Brunson's prior convictions for both possession and distribution of cocaine and marijuana. Well, Mr. Markioli, why don't you, why don't you address Mr. Fine's argument that if you don't, if you don't, like you miss 100 percent of the shots you don't take. So effectively you had a, the government won by a, by a buy in this case because the defense never took the field. That there was just, there was, there wasn't a question asked, there was no effort at all to cross-examine. It was just a, it was a lay down. I mean, at, at some point do, are you entitled to, to say there, there could certainly be some prejudice from not having your defense lawyer do anything for you. And this guy did nothing. So I think the defense attorney did do some things. He certainly did cross-examine Trooper Fink during the hearing. But I have two responses to your question, Judge Jordan. First is, even if we accept that through very rigorous cross-examination, Attorney Rivera would have gotten Trooper Fink to say, yeah, I totally made up the thing about the cocaine being in the baggie. I knew it was in a dollar bill. All you do is you take out the, the language about a baggie. You still are left with the cocaine. And frankly, the presence of cocaine alone would have been enough to get that search warrant. And then you have the additional facts that I listed a moment ago. And even if we go another step and say that Attorney Rivera should have called Mr. Brunson or should have called Ms. Wilson to testify during the hearing. And we assume that Attorney Rivera would have made that shot. He would have sank the three-pointer. It still would have gotten him nowhere because all that we would have done is again, remove from the affidavit, the fact that there was marijuana scattered on the floor. You're still left with the strong odor of marijuana in the house, which has not been, which there's been no attempt to rebuy. You're still left with cocaine. Isn't your opponents, you know, at least, at least one of their strongest points, isn't it that this mistake, this mistake about the baggie or dollar bill should cause us to question all of the other pieces of evidence that were used? You know, this, this notion of, you know, fool me once, you know, I don't, you know, I don't know that I have to believe anything else. And so does that have its limits here? Or once they've, once we've got a mistake about baggie, not dollar bill, should we just begin to say we need a hearing to reassess the strong odor of marijuana, the furred of movements? I assume the hearing's not going to make an ounce of difference on the criminal history. Maybe, maybe running towards the safes or walking towards the safes, going upstairs, we might make a difference. But, but isn't the strongest play he makes that, that you have to reassess all those other things once we've got that problem? Well, I think the problem with that argument is it runs right up against the underlying substantive claim at issue here, the Frank's claim and the Supreme Court instructed in Frank's and then all of this court's cases following Frank's, that you don't automatically cross out everything in the affidavit, even if you think that there was one, maybe even two misrepresentations in the affidavit. The defendant still has to establish that there were other knowing or at least reckless misrepresentations in the affidavit. If the defendant can't do that, then you evaluate what's left in the affidavit to determine whether there was probable cause. And in the 2255, you do that, you do that on the basis of testimony and discussion and trying to understand, you do that with some kind of a hearing. I'm speaking of the Frank's hearing that did actually occur in this case, but in the 2255 context, the district court is instructed to take what the defendant is presenting in the 225 motion and supporting papers is true. And that's what I'm asking the court to do. And that even if it's the best day for Mr. Brunson and his purported testimony is true and Ms. Wilson's purported testimony is true, he still loses on the suppression motion with facts that he could not possibly dispute. Even if we tried to hypothesize what more Mr. Brunson or Ms. Wilson could have testified about at that hearing, there's never been an ounce of suggestion that he could dispute the cocaine that was found on him or his criminal history. He's never attempted to dispute the odor of marijuana or retreating into the upstairs portion of the house where there are three safes. Well, you would agree, would you not, that the language about conclusive is pretty, is meant to set a high bar, right? I think that's correct, Judge Jordan. So how are we to assess that in a circumstance, you know, well, you've heard the questions we've been asking Mr. Fine. So we understand the, I think the government's argument here, particularly on the prejudice prong, but to what Judge Phipps was asking you earlier, if you don't have a there, there will be something that happens that said that leads people to say, look, I'm having trouble with other things that are in the evidence. I'm having trouble with other testimony that government witnesses are putting before me. Or is that just too speculative? Are we in the realm of speculation? We should just stay out of that. I think that is too speculative. And if that were the inquiry that the court should engage in, or the district court should engage in, then there would be a hearing in every single 2255. So let me just tease this out. Let's just say that Brunson and his girlfriend's affidavits weren't just about the marijuana strewn on the floor. Let's just say they wanted to say there's no safes in the house. I didn't, I wasn't running upstairs. That actually wasn't cocaine, like to testify to what that really was or who planted it on me or something like this. But let's say that's what the affidavit said. Hearing or no hearing? I think based on the record in this case, there would have been no hearing. And what I would point the court to is the pre-sentence report. There are undisputed facts in the pre-sentence report that Mr. Brunson had cocaine on him at the time of his arrest. And frankly, the pre-sentence report also includes undisputed facts that there was marijuana scattered on the floor. So the district court is charged with, when evaluating the defendant's allegations, to determine whether those allegations are frivolous or conclusively refuted by the record. And based on the hypothetical that you've posed, Judge Phipps, which obviously are not what Mr. Brunson has alleged, he would run headlong against the record in this case. And the only avenue then might have been, but I mean, doesn't the marijuana on the floor and the photos kind of run headlong into each other too? They do. I mean, as the court was suggesting or was asking Mr. Fine, I think the photos are the most significant reason that Attorney Rivera didn't call Mr. Brunson or Ms. Wilson to testify. But if that's all we had was just the photos and perhaps a hearing would have been appropriate. But again, if we're assuming that Mr. Brunson would have taken the stand and the court would have credited his testimony that there wasn't actually marijuana on the floor and the photos were doctored in some way or there were no photos, then Mr. Brunson still runs into the problem that his Frank's claim would have still failed. There's really nothing that his attorney could have done. That's your argument with respect to the falsehood versus mistake piece. You heard Mr. Fine say, well, we're putting the rabbit in the hat if we think about this as a mere mistake. So my understanding, the government right to be saying, well, go ahead and think of it as a falsehood. It just doesn't matter because even if he, even if he said, yeah, I've lied about the baggy, I lied about it. It doesn't matter because why? Because there's still cocaine, whether it's in a baggy or not. That's correct, Your Honor. Under Frank's and all this court's precedents following Frank's, all you do is eliminate the portion that was a lie or a misstatement and then you evaluate probable cause on that basis. And this warrant had more than sufficient evidence establishing probable cause. Unless there are no further questions, we just ask the court to affirm the district court's order. Thank you. May it please the court, what should Mr. Rivera have done? Mr. Rivera should have cross-examined Trooper Fink about the scienter involved in his mistake. We know it's a falsehood. Was it reckless? We don't know that. It's a pretty serious matter. It's a probable cause affidavit. What else should he have done? Knowing that there was already one falsehood in the affidavit of probable cause, he should have called the agents who fed the information to Trooper Fink, that same pipeline that resulted in the wrong information about the baggy versus the dollar bill. And he should have gone through their testimony to see there were other errors in what he included in the affidavit of probable cause. Because otherwise there was no evidence in the record that was other than hearsay about any of those other things. That's something that a competent lawyer would have done. He would have called Ms. Wilson to the stand to testify at least to what was in her affidavit. Would that get them to the goalpost? We're continuing with the analogies to sports. I don't know, but we can't say that conclusively it would not have, which is how we have to measure this. Well, can we say conclusively that even if he'd uncovered a lot of good stuff, there still would have been no prejudice because there still would have been grounds for a warrant because there still would have been cocaine in his pocket? We don't know what else he would have developed. That's part of the problem. There's an absence. There's no, nobody has suggested that there wasn't cocaine in his pocket, right? I mean, that's the, like, even if you wipe everything else out of this, that's, that's, that's a piece that's, I'm just interested to hear how you get around that, Mr. Fine, because you have, you have suggested ways that a lawyer might have done better, but looking at, off of performance, onto prejudice, how do you get around cocaine in the pocket while executing the fugitive warrant and therefore, given the man's criminal history with, with near certainty, a search warrant? Your Honor, I think the answer to that is, is again, and I don't mean to perseverate, but we don't know what would have developed. That's part of the problem because there was an absence of, you know, to use your, your phrasing. Counsel didn't take the field here. He called for a Franks hearing where he had to prove that the falsity, that there were falsities that were at least reckless. He cross-examined. He didn't cross-examine him about Sienta in one bit. You can go back and look at the transcript, due respect to my friend, that simply did not happen. So what do we have here? We have, and let me, let me revert to a point that Judge Phipps has raised a couple of times, which is, well, would there have to be a hearing every time? And the answer is no, because this is a case where we know that there was something false and any competent lawyer would try to, to discern whether that was at least reckless. And this lawyer didn't do that. So in this case, it was not conclusive that Mr. Brunson could make out a claim. We don't know what counsel's strategy was. My opponent offers various hypotheticals. We don't know that. There should have been a... It seems the most it's inconclusive is that there was a failure at the performance prong. I don't know how it's conclusive that there was a prejudice based on the failure to do any of the items that you've identified, other than to say, could possibly be. And I just don't know that could possibly be reconciles well with the text of even a good word in your client's favor, conclusive. If I may go ahead and answer, Judge Jordan. Thank you, Judge Phipps. I think the answer again is that you're respectfully compartmentalizing a bit much on the Strickland test because... Strickland, you know... No, I understand. One or two, you know. I'm with you, Your Honor. The problem with that though is that if you have deficient performance, you may not be able to prove prejudice because of the deficient performance, because you don't know what would have come from, for example, cross-examination. It's one thing to say, well, what would Ms. Wilson have testified to? We can tell you that part because she's available to us. I don't know what Trooper Mnovitsky or Deputy Lewis might have said. They're not available to us. It's a big, empty space that counsel left for us. We would ask that the court reverse and remand with instructions that the district court conduct an evidentiary hearing on Mr. Brunson's Section 2255 motion. Thank you, Your Honors. Okay, and we thank you, Mr. Fine, and your colleagues at your firm. We know that it is a sacrifice to take on these pro bono cases, and you've done an admirable job. We thank the government for their argument here today, and we've got the matter under advisement. Thank you, Your Honor. It's a privilege to serve the court. Thanks. We appreciate your efforts. Thank you, Judge Roth. Okay.